M. NELSON ENMARK, ESQ. #032477
CHAPTER 12 TRUSTEE
3855 NORTH WEST AVENUE, SUITE 108
FRESNO, CA 93705
TELEPHONE: (559) 229-4200

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

IN RE: ) Case No.: 11-50606
)
MICHAEL G. ALVES, ) CHAPTER 12
)
ELIZABETH M. ALVES, )
) TRUSTEE'S REPORT RE CONFIRMATION
DEBTOR(S), )
) DATE: July 7, 2011
) TIME: 10:30 A.M.
) PLACE: C. CLIFTON YOUNG
)         FEDERAL COURTHOUSE
)         COURTROOM #2, 5TH FLOOR
)         300 BOOTH STREET
)         RENO, NV
)

**COMES NOW M. NELSON ENMARK,** the duly-appointed and qualified and acting Chapter 12 Trustee in the above-entitled matter and states as follows:

The Debtor is involved in the farming of almonds on a ranch near Hilmar, CA, with a ½ interest as well as the complete interest in the Newman, CA, almond property and the totally owned dairying operation involving goats currently located on the leased property of the Fernley Goat Farm near Fernley, Nevada.

1. <u>Eligibility:</u> The Debtor schedules reflect the fact that there is $1,258,378.35 outstanding liabilities which amount is not substantially modified by the claims on file currently which total $1,607,154.03, the total of which are less than the eligibility standard of $3,544,525.00. Furthermore, it appears clear that more than 50% of the Debtor's debts involve performing farming operations and more than 50% of the Debtor's gross income was derived in the year 2010, the year immediately preceding the commencement of this action from the farming operation. Therefore, the Debtor clearly appeared eligible for a Chapter 12 proceeding.

1

2. <u>Chapter 7 Analysis:</u> The Debtor has provided for a payment to the unsecured creditors dependent entirely upon the Debtor's projected disposable income. However, in light of the fact that there are non-exempt assets consisting of the goat herd which according to the original schedules was scheduled at $300,000.00 and according to the estimates of the Plan of $197,000.00 that is the minimum amount required to be paid to the allowed claims of unsecured creditors and the Plan must accordingly so provide as well as the value of the scheduled almond crop, miscellaneous equipment, hay, grain and supplies, none of which were subject to an exemption nor apparently subject to any secured claims representing another $60,000.00 according to the Debtor's schedules. Therefore, the minimum amount to be paid to the unsecured creditors must be either $360,000.00 as provided in the original schedules or $197,000.00 plus $60,000.00 to wit: $257,000.00 according to the Debtor's Plan. It appears to the Trustee that the current valuation provided is probably accurate as far as the goat herd is concerned and the latter figure is the appropriate amount but that must be a minimum amount to be paid to the unsecured creditors and it is not clear to the Trustee that the projected disposable income will be adequate to fund such amount under the Plan as that would require this Trustee's comp an annual payment over 5 years of $55,870.00.

3. <u>Projected Disposable Income:</u> It appears clear that there is an adequate usage of projected disposable income in light of the Chapter 7 analysis above that will be required and therefore that should not be an issue in the case. The Plan has also provided for an annual review in regards to projected disposable income. It is the Trustee's preference in such cases to have an actual budget that projects the amount the Debtor commits himself to so as to be clear to all concerned, however the method utilized is appropriate as regards the projected disposable income.

4. <u>Feasibility:</u> Determination of the feasibility is dependent upon appropriate proof by way of budgets, etc., and a Plan which accurately sets forth the amount of the unsecured creditors. Furthermore, the Debtor has indicated a probably desire to remove the herd to a new and different place and this would obviously entail a further review regarding the feasibility of

2

the same. Without current budgets it is impossible to have an accurate determination as to feasibility.

5. <u>Objections:</u> An objection has been filed as to the valuation and it appears to the Trustee that that valuation is necessary in order to determine the final disposition of the case. It is the Trustee's understanding that the Debtor's counsel has agreed to the extension of time for hearing as to the valuation attempt to resolve the same and it appears to the Trustee that that is appropriate and the Trustee has no objection to that and assumes that the case will be continued an appropriate length of time to resolve the matters above as well as to determine the ultimate valuation as to the objecting creditor, Aurora Loan Services. In addition, as set forth above, it appears clear to the Trustee that the Plan must specify a method of assuring the payment to the allowed claims of unsecured creditors in the amount set forth hereinabove.

DATED: July 6, 2011.                    Respectfully submitted,

/s/ M. Nelson Enmark

_____
M. NELSON ENMARK
CHAPTER 12 TRUSTEE