John White, Esq., SB #1741
WHITE LAW CHARTERED
335 West First Street
Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com
Counsel for the Debtors

E-filed on August 4, 2011

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:

MICHAEL GEORGE ALVES and
ELIZABETH MEIRINHO ALVES, dba
ALVES GOAT DAIRY

Debtors
_____/

CASE NO.: BK-N-11-50606-BTB
Chapter 12

FIRST AMENDED CHAPTER 12
PLAN AND VALUATION MOTION

Hearing Date: September 1, 2011
Hearing Time: 2:30 p.m.
Estimated time: 1 hour

## CHAPTER 12 PLAN

MICHAEL GEORGE ALVES and ELIZABETH MEIRINHO ALVES, husband and wife, ("Debtors") submit the following First Amended Chapter 12 Plan and Valuation Motion (the "Plan") pursuant to section 1221 of the Bankruptcy Code and pray for its confirmation:

The Economic and Feasibilty Plan Supplement ("Plan Supplement"), attached hereto as Exhibit A, is incorporated herein as an integral part of this Plan. Its terms and conditions shall be binding on the Debtors, provided however, that to the degree that the Plan Supplement conflicts with this Plan, this Plan shall control.

1. Debtors shall submit all or such portion of their future earnings or other future income to the supervision and control of the trustee as is necessary for the execution of the Plan for the five (5) year period beginning on confirmation of the

1

Plan and continuing for 5 years from the date of the first Plan payment. Debtors' plan payments to the Trustee begin on September 1, 2011 and the first annual payment to creditors is August 1, 2012.

2. All claims entitled to priority under Section 507 of the Bankruptcy Code ("Section 507"), shall be paid in full, in deferred cash payments, unless—

   A. the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under Section 507, but the debt shall be treated in such manner only if the debtors receives a discharge; or

   B. the holder of a particular claim agrees to a different treatment of that claim.

3. Claims and interests shall be divided into three classes, with each secured claim being in its own sub-class. Each claim or interest within a particular class shall be treated the same unless the holder of a particular claim or interest agrees to less favorable treatment, as follows:

   A. Secured. (Class 1)

      i. Aurora Loan Service is Class 1(a).

      ii. Chase Home Finance is Class 1(b).

      iii. PNC Bank is Class 1(c).

      iv. Les and Darlene Borges is Class 1(d).

      v. Specialized Loan Servicing, LLC, is Class 1(e).

      vi. San Joaquin Valley Haygrowers Association is Class 1(f).

      vii. Savant Holsteins is Class 1(g).

  B. General Unsecured Claims. (Class 2)

  C. Interests (Class 3)

4. Claims entitled to priority under Section 507 shall not be classified but shall be paid in full in equal quarterly payments over the life of the Plan.

5. Treatment of Claims (Claims bar date was 7/5/2011):

**A. Secured Claims.**

**Class 1(a) (Aurora).**

The $582,378.82 claim of Aurora Loan Service (Claim No: 18), herein "Aurora," is allowed as a secured claim in the amount of $380,000, being the fair market value of Debtors' almond farm, situate at 2900 Villamanucha Rd, Newman, CA, 95360, being Assessor's Parcel No: 049-023-019 ("Almond Farm"). The remainder of Aurora's claim shall be treated as a Class 2 unsecured claim.

Aurora's secured claim shall bear simple annual interest at the rate of four and one/half percent (4.5%), amortized over thirty (30) years, paid at the rate of $23,328.79 per year, with the first payment being due on August 1, 2012. Each annual payment which comes due during the term of this Plan will be made by Debtors to the Chapter 12 Trustee assigned to this Case (Nelson Enmark), who, in turn, shall pay Aurora. Aurora's note, revised as set forth above, shall be paid in full no later than December 15, 2021, whereupon Aurora shall release its lien on the Debtors' property. An amortization schedule is attached as Exhibit B.

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Payments shall be made by the Trustee during the term of this Plan. If any payment is not received by Aurora on or before the due date, Aurora shall be entitled to relief from stay 10 days after serving on Debtors' counsel, John White, Esq., (the "Notice Period") a written notice of default (the "Default Notice") which Default Notice shall be filed with the Bankruptcy Court with a request that the Court enter an order on the expiration of the Notice Period terminating and lifting the automatic stay of 11 USC 362(a) and permitting Aurora, its subsidiaries, affiliates, agents, representatives and/or employees to: (i) proceed with the a foreclosure proceeding with respect to the real property collateral securing its loan, (ii) to enforce its rights with respect to the collateral securing its loan pursuant to the terms and conditions of the documents evidencing the loan, and applicable non-bankruptcy law; and (iii) exercise any and all state law and contractual remedies with regard to the collateral securing its loan. Except as modified herein, Aurora's contractual rights are not affected by this Plan.

**Class 1(b) (Chase).**

Debtor Michael Alves owns the fee interest in property situate at 8724 Griffith Ave, Hilmar, CA (APN 046-190-040), herein "Hilmar Rental." The property is managed by Pal Enterprises. The Hilmar Rental was pledged to Chase Home Finance ("Chase") on August 6, 2003 (Series No. 2003-04899) as security for a $300,000 promissory note. Therefore, Chase is a creditor, despite its not having, to date, filed a secured claim in this Case. Since Chase has not filed a secured claim, Debtors have had to calculate the unpaid balance of the Chase note, and by their calculations, it is $270,000. The fair market value of the Hilmar Rental property is $273,000.

Chase's claim is unimpaired by the Plan except that interest on its note is set at four and one/half percent (4.5%) simple and the $12,000 in arrearages shall be paid in equal annual

installments over the 5 year life of the Plan, the first payment due August 1, 2012, to wit: Chase shall receive annual payments of $18,975.72 ($16,575.72 plus $2,400 on the arrearage) on August 1, 2012 and on August 1 of each year of this five year Plan. (Debtors shall make annual payments of $16,575.72 directly to Chase following the fifth year). The Chase note shall be paid in full no later than August 1, 2021. Once paid in full, as above, Chase shall release its lien on the Debtors' property. An amortization schedule is attached as Exhibit C.

Payments shall be made by the Trustee during the term of this Plan. If any payment is not received by Chase on or before the due date, Chase shall be entitled to relief from stay 10 days after serving on Debtors' counsel, John White, Esq., (the "Notice Period") a written notice of default (the "Default Notice") which Default Notice shall be filed with the Bankruptcy Court with a request that the Court enter an order on the expiration of the Notice Period terminating and lifting the automatic stay of 11 USC 362(a) and permitting Chase, its subsidiaries, affiliates, agents, representatives and/or employees to: (i) proceed with the a foreclosure proceeding with respect to the real property collateral securing its loan, (ii) to enforce its rights with respect to the collateral securing its loan pursuant to the terms and conditions of the documents evidencing the loan, and applicable non-bankruptcy law; and (iii) exercise any and all state law and contractual remedies with regard to the collateral securing its loan. Except as modified herein, Chase's contractual rights are not affected by this Plan.

**Class 1(c) (PNC Bank).** The $ 200,757.31 secured claim of PNC Bank (Claim number 9), secured by a junior deed of trust on the Almond Farm (DT recorded 3/16/06 as Series No 2006-0039129), is specifically disallowed as a secured claim and shall be treated, in toto, as a Class 2 general unsecured claim.

5

**Class 1(d) (Borges).** The $300,000 secured claim of Les and Darlene Borges, secured by a junior deed of trust on the Almond Farm (DT recorded 10/9/2007 as Series No 2007-0125564), is specifically disallowed as a secured claim and shall be treated, in toto, as a Class 2 general unsecured claim.

**Class 1(e).(Specialized Loan)** The $181,328.39 claim of Specialized Loan Services, filed as a secured claim (Claim 28), and secured by a junior deed of trust on Debtors' Hilmar Rental, is specifically disallowed and shall be treated, in toto, as a Class 2 general unsecured claim. This loan was orginally made by CIT Group, securing a $179,900 loan dated made June 6, 2006 and recorded as Doc. No. 2006-041967. Specialized Loan asserts that it now owns the loan. This claim is specifically disallowed and shall be treated, in toto, as a Class 2 general unsecured claim.

**Class 1(f) (Haygrowers)** The $124,472.80 judgment of San Joaquin Valley Haygrowers Association, recorded against the Almond Farm on 11/16/2010 in Stanislaus County, CA as Series No. 2010-0102619 by reason of a judgment entered in the Superior Court of California on April 20, 2010, is specifically disallowed and shall be treated, in toto, as a Class 2 general unsecured claim.

**Class 1(g) Savant Holsteins** The claim of Savant Holsteins (Claim 26), filed as a secured claim in the amount of $19,961.85 is secured by Debtor's Kirby Mixer and John Deere Skidsteer loader, each of which is leased. Debtors are treating this claim as two leases. Debtors assumes these two leases (see executory contracts, below). This creditor is therefore unimpaired.

 **B.** **General Unsecured Secured Claims.**

**Class 2.**

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Allowed General Unsecured Claims shall be paid on or before August 1 of each year of the Plan, beginning August 1, 2012, a sum equal to all of Debtors' disposable income, as shown in the Plan Supplement (see Exhibit A). As set forth hereinbelow, Class 2 creditors would receive $102,818 had Debtor filed Chapter 7, rather than Chapter 12. Debtors shall pay the trustee a sum sufficient to ensure that Class 2 creditors with allowed claims receive at least as much as they would have received had Debtors filed Chapter 7, to wit, Debtors will make the payments to unsecured creditors as follows: $ Yr 1, 26,519; Yr 2 , 35,819; Yr 3, 54,953; Yr 4, 71,293; Yr 5, 94,381 (Total $282,963)[1] during the term of this Plan.

### C.     Interests.

### Class 3.

The equity interest of Debtors is not impaired by the Plan.

6. Reservation of Rights: Should any creditor's consent be necessary to this Plan, or any order confirming it, Debtor reserves all rights, as to said creditor, including the right to seek a continuance of the plan confirmation hearing, or to proceed by such motion or adversary proceeding as may appear proper under the circumstances, either before or after plan confirmation.

7. Debtors assume their leases with Savant Holsteins, dba First Savant Leasing of their John Deere Skidsteer Loader, being lease number 831-B ($300 per month), and of their Kirby Feed Mixer Wagon, being lease number 831-A ($275 per month), their milk purchase contract with Laura Chenel's Chevre, dated 4/6/11, their land lease with their Hilmar Rental tenant, Brian Campbell, their home and shop lease of the Hilmar Rental tenant, Joe Poulos, and their lease of the Almond

---

[1] Amounts include administrative costs...i.e. the amounts actually received by unsecured creditors will be less, due to deduction of Court-approved administrative expenses.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Farm residence to David Pires. All other executory contracts, and leases, including but not limited to the lease with the Borges Family Trust of the Fernley goat facility and the Borges Family Trust' milk equipment contract are specifically rejected.

8. Feasibility: Debtors' attached Plan Supplement (Exhibit A) shows that Debtors will be able to make Plan payments.

9. Valuation motion: Debtors request that the Court determine, at the confirmation hearing, that the fair market value, on the Petition Date, of the following assets is as follows:

   A. Goat Herd: $72,818. See Plan Supplement, Section 2, page 5.

   B. Almond Farm: $380,000. This valuation is based on $14,000 per acre for the 18 acres in almond trees ($252,000) acres plus $121,000 for the house. See Plan supplement, Section 2, page 3.

   C. Hilmar Rental: $273,000. This valuation is based on $9,000 per acre for the 16 acres of farm land and $129,000 for the house (Zillow estimate). See Plan supplement, Section 2, page 4.

   D. The following miscellaneous non-exempt unencumbered Personal Property[1]: $30,000

      i. $2,000-bank accounts
      ii. $1,500 Astrovan
      iii. $3,000 2 loader buckets, 1 hay fork, 1 welder
      iv. $7,500 almond crop
      v. $7,000 Gates Panels, buckets, water troughs, crowd gate, variable drove
      vi. $8,000 Hay, grain, supplies

---

[1] See amended Schedule B

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

10. Lien Stripping. Debtors request that the Court strip off the foregoing described liens of PNC, Borges, Specialized Loan Servicing (successor to CIT Group), San Joaquin Valley Hay Grower's Association, and enter an order determining that their liens are void. Debtors request that the Court strip down the lien of Aurora Loan Services, and enter an order determining that the secured amount of its claim is $380,000.

11. Payments. Debtors shall make their payments monthly to the Trustee, in the variable amounts shown in Tables A of the Plan Supplement. Whenever the Plan Supplement shows that Debtors have no disposable income for a month, no payment to the Trustee will be due for that month. Trustee may call a Plan default in the event Debtors are more than 30 days late with a payment, provided he first notices the Debtors' counsel (John White, 335 W. 1st. St., Reno, NV 89503) of the Default and gives Debtors at least 5 days to cure. Though Debtors are to make irregular payments to the Trustee, as above, Trustee shall, during the term of this Plan, disburse payments to creditors annually, also as above, in the amounts shown above.

12. All monetary defaults have been considered in the Plan. All such defaults shall be deemed cured on confirmation of the Plan.

13. All property of the estate shall vest in the Debtors on confirmation of the Plan.

14. Confirmation of this Plan shall constitute a finding that cause exists to extend Plan payments over a period in excess of three years.

15. Allowed administrative expenses, including statutory Trustee fees, shall be paid in full in equal installments, to the extent possible, over the 5 year life of the Plan.

9

Dated August 4, 2011.

/s/ Pls. see attached
---
MICHAEL GEORGE ALVES, Debtor

/s/ Pls. see attached
---
ELIZABETH MEIRINHO ALVES, Co-Debtor

Submitted by:

WHITE LAW CHARTERED

*[signature]*
---
JOHN WHITE, ESQ.
Counsel for the Debtors

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

10

1  
2  Dated August 4, 2011.  
3  
4  _____    _____  
   MICHAEL GEORGE ALVES, Debtor      ELIZABETH MEIRINHO ALVES, Co-  
5                                    Debtor  
6  
7  Submitted by:  
8  
9  WHITE LAW CHARTERED  
10  
11  _____  
   JOHN WHITE, ESQ.  
12 Counsel for the Debtors  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28                                    10  

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

## INDEX OF EXHIBITS

| Exhibit | Description | No. of Pages including cover |
|---------|-------------|------------------------------|
| A | Plan Supplement | 21 |
| B | Aurora Loan Amortization Schedule | 2 |
| C | Chase Loan Amortization Schedule | 2 |

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228